UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:                          )
                                )
MARK THOMAS SCHWAB,             ) Case No. 13-27331-EEB
                                )           Chapter 13
          Debtor.              )
_____)

NON EVIDENTIARY HEARING ON 1. CONFIRMATION OF AMENDED PLAN -
OBJECTIONS FILED BY EVELYN SCHWAB, THE IRS, DAVID WEIN AND
CHAPTER 13 TRUSTEE KIEL AND 2. DEBTOR'S OBJECTION TO CLAIM OF
CREDITOR EVELYN E SCHWAB AND THE CREDITOR'S RESPONSE THERETO

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ELIZABETH E. BROWN
WEDNESDAY, MAY 21, 2014; 1:57 P.M.
DENVER, COLORADO

FOR THE TRUSTEE:
WILL EVANS, ESQ.

FOR THE DEBTOR:
DANIEL K. USIAK, ESQ.

FOR CREDITOR EVELYN SCHWAB:
EVELYN SCHWAB, PRO SE

FOR CREDITOR DAVID WEIN:
DAVID WEIN, PRO SE

Proceedings digitally recorded by court personnel.
Transcript produced by court-approved transcription service

TRANSCRIPT REQUESTED BY:     MARK SCHWAB
TRANSCRIPT ORDERED ON:       JULY 7, 2014
TRANSCRIPT DELIVERED ON:     AUGUST 6, 2014
TRANSCRIPT PRICE:            $3.65 PER PAGE; $91.25

1                    Denver, Colorado, May 21, 2014

2              (Time noted, 1:57 p.m.)

3              THE COURT:  Next up is case of Mark Thomas Schwab,

4    Case No. 13-27331.  Appearances, please.

5              MR. USIAK:  Dan Usiak on behalf of the Debtor.

6              THE COURT:  Thank you.

7              MS. SCHWAB:  And, Your Honor, my name is Evelyn

8    Schwab.  I'm a -- I'm objecting to Mr. Schwab's.

9              THE COURT:  Okay.  Thank you.

10             MR. WEIN:  Your Honor, this is David Wein, I am also

11   here on the phone objecting to Mr. Schwab's attempts.

12             THE COURT:  Okay.  Thank you.  I have some questions

13   -- well, oh, sorry, we need our Trustee.

14             MR. EVANS:  Judge Brown, Will Evans on behalf of

15   Chapter 13 Trustee Doug Kiel.

16             THE COURT:  Thank you, Mr. Evans.  All right.  And I

17   do have a question for you, Mr. Evans.

18             You know, I've been reading what the parties have

19   filed in terms of their objections to the Plan, and it's

20   making me question and wonder about whether there's been

21   enough investigation into the assets of this Debtor.

22             You know, he's valued a company that Mr. Wein is

23   indicating has multi-million dollar contracts and he's just

24   listed it as "unknown" in his Schedules.

25             And I, you know, it obviously impacts the best

1    interest of creditor's test, if that value's not accounted

2    for.

3            And then the other discrepancy that's noted is that

4    we have, under Schedule A, only $1,000 for a time share

5    interest in a property in Beaver Creek, but the Schedule D

6    indicates at least four -- four real estate holdings that are

7    mortgaged, apparently by the Debtor personally.

8            So it makes me question whether or not the Debtor has

9    disclosed all the real property that he owns as well as a

10   reasonable value for his business interests.

11           So I don't know if the Trustee's had a chance and

12   wants to investigate that.  The Court would appreciate that.

13           MR. EVANS:  All right, Your Honor.  I understand.

14   And I believe there's a recent Plan just filed on May 16th

15   that we haven't reviewed yet.

16           We didn't have any of this in our previous objection

17   so I would have to review the testimony from the 341 hearing

18   because I think there was several questions about those

19   issues; either the Trustee was satisfied with the responses in

20   what we received at that hearing and the testimony, or it's

21   something we need to look at and amend an objection for either

22   way.

23           THE COURT:  Okay.  Let me ask, Mr. Usiak, if you

24   could tell me a little bit about the discrepancy between

25   Schedule A and D for example.  Can you explain that?

1          MS. SCHWAB:  Yes, Your Honor.  Well, a couple

2    comments I wanted to make.  The real estate that Mr. Schwab is

3    on the mortgages to are not titled to him.  They are -- but

4    he's a co-signer on the mortgage.

5          As far as the best interest of creditor's test, in

6    this case the bar date for filing proofs of claim is passed,

7    and we don't have any unsecured creditors.

8          We have secured claims secured by the real estate and

9    we have priority claims.

10          THE COURT:  So you're saying Mr. Wein didn't file a

11    formal proof of claim, and same with Evelyn Schwab, didn't file

12    a formal proof of claim?

13          MS. SCHWAB:  Yes, I did, Your Honor.

14          MR. USIAK:  They both filed proofs of claim --

15          THE COURT:  But those are unsecured claims, right?

16          MR. USIAK:  Ms. Schwab is a priority claim because

17    it's domestic support obligation.

18          THE COURT:  But still an unsecured claim as opposed

19    to secured, right?

20          MR. USIAK:  It is unsecured and it's going to be

21    provided for 100 percent in the Plan.

22          MS. SCHWAB:  I -- the Plan.

23          THE COURT:  I'll call on you in just a minute,

24    Ms. Schwab, so you'll have a chance to respond to all of

25    this.  Let me just kind of take it in some kind of order to

1    start off.  Okay?

2          Go ahead, Mr. Usiak.

3          MR. USIAK:  And then there was a proof of claim filed

4    by Mr. Wein and there's a zero dollar amount.  So there's

5    really no claim to pay.

6          THE COURT:  All right.  Although you do know that

7    he's filed a lot of extensive papers with the Court that tell

8    exactly -- there's a Court order, right, even sanctioning your

9    client and saying pay $10,000 by a certain date?

10         MR. USIAK:  I think the sanction is against the

11   company and not the individual.

12         THE COURT:  Okay.  That's a good question, let me

13   look.

14         MR. WEIN:  Your Honor, I can answer that if you wish.

15         THE COURT:  And who's speaking?

16         MR. WEIN:  This is David Wein.

17         THE COURT:  Okay.  But I'm -- all right, just a

18   moment.  Plaintiff is fined $10,000 -- oh, yeah.  So that is E-

19   4, Inc.  Okay.

20         All right.  Go ahead, Mr. Wein.

21         MR. WEIN:  Yes.  Just to expedite it.  That is true,

22   it's an order against E-4 by the District Court of El Paso, but

23   E-4 is controlled by Schwab, has been controlled by Mr. Schwab

24   in various facets including president, CEO, and other things,

25   and had he resigned last year recently, I'm not privy to that.

1   But during these periods and now certainly he has been in

2   control of the company, it's an alter ego of him.

3        We're trying to stop him from draining the accounts,

4   including the 300,000 that the IRS just showed he took from E-4

5   last year when under Court order to provide me and the Court

6   with indemnification, et cetera.

7        So he's in your Court, gaming, basically, trying to

8   get out of District Court while draining the account and then

9   trying not to be held personally liable.

10        And in accordance with my fiver pager that I wrote,

11   that Mr. Schwab was on the stand, or about to get on the stand,

12   the day he filed for this bankruptcy hearing so he could get

13   out of District Court hearing and avoid his obligations.  Thank

14   you.

15        THE COURT:  The problem is, though, that right now

16   you only have Court orders against the company.

17        And while you have a counter-claim asserted against

18   him, why did you file a proof of claim with a zero amount?

19        MR. WEIN:  Well, ma'am, Your Honor, he had claimed

20   originally, in October, that I had a -- I'm going to assume he

21   used a judgment or somehow had a claim for 30-something

22   thousand dollars.

23        I've said all along I don't have a claim, I don't

24   have a court order, a judgment from El Paso County.  I don't

25   want to be categorized, as I've said, as a creditor because I

1    don't want him to somehow be able to game or write off or get,

2    you know, relief now from something that hasn't even occurred

3    and that he's running from in District Court.

4          THE COURT:  Mr. Wein, let me explain a little bit.

5    And then, I think what's a problem here is that you don't have

6    a lawyer to advise you on bankruptcy matters, and you're saying

7    kind of two things that are contradictory.

8          You're saying you don't -- you're not his creditor

9    and you don't have a claim against him, but on the other hand

10   you want to pursue him because he's the alter ego of the

11   company and you believe that he did the bad acts that you're

12   complaining of.  And those are two completely contradictory

13   statements.

14         So, you know, you really should have filed a proof of

15   claim with the dollar amount even if you don't yet have a

16   judgment against him.

17         You were asserting claims in litigation and you want

18   further relief from this individual person.  So to participate

19   and get a distribution from his bankruptcy case you have to

20   have a proof of claim with a -- you know, at least assert what

21   you think your dollar amount is.

22         And then he can object to that and we go forward or

23   you get relief from stay and you battle it out in State Court.

24   But you can't just say, I'm not his creditor but I do have

25   claims against him.  Those don't --

1          MR. WEIN:  Actually, Your Honor, I don't think I have

2     claims.  I meant that he needs to show up in District Court of

3     El Paso County where we will prosecute him and we'll find him

4     guilty.  I will get a judgment against him.  But those are in

5     the future.  I don't want him to use now some way to get out of

6     a future action.

7          I don't say -- and for the record, I don't have a

8     claim against him now, I'm not a creditor, and I don't want my

9     name even associated with this.  He's trying to, obviously, get

10    the cart in front of the horse.

11         And furthermore, I didn't have any money to hire a

12    lawyer because he's stolen my money.  Not only has he not paid

13    the indemnification, not only has he stolen the money from last

14    year, but he's taken a half million dollars out of the

15    corporation that he's in a lawsuit with.  And, again, this is

16    Bankruptcy versus District.  But, he's running from one to the

17    other and gaming it.  And I just wanted the Court to be clear

18    that I've been adamant, about five pages, letting you know the

19    history of this man.  I won't say what he is.  But, I just

20    wanted you to know and there's some -- I think you started off

21    well with some good questions.

22         I don't where E-4's represented here, I can't

23    represent them.  Someone should be representing the

24    shareholders and all the money for E-4.  I don't even see that

25    here.  And, again, the attorney will say probably that time has

1  passed.  But, you know, the Court should take care of people

2  and protect the innocent, so that's why I'm asking Your Honor.

3        THE COURT:  Yeah.  But we set out rules for everybody

4  and we say, here's a deadline and we have to enforce that.  So

5  I appreciate -- if you are going forward with criminal

6  proceedings in Texas, that's not stayed by the bankruptcy.  If

7  he's a witness in litigation against the company, that's not

8  stayed by the bankruptcy.  But if what you are doing is

9  pursuing a claim that you want him to have personal liability

10 for at the end of the day, that's a problem because of --

11        MR. WEIN:  Yes, ma'am.

12        THE COURT:  -- this bankruptcy filing.

13        MR. WEIN:  Yes, ma'am.  I think you mentioned Texas,

14 I'm a little confused on that.

15        THE COURT:  Oh, is that not where it is?  I'm sorry.

16 Is it here in Colorado?

17        MR. WEIN:  It's all in here in Colorado, Your Honor.

18        THE COURT:  Yeah.  It's El Paso County.  Somewhere I

19 saw Texas.  Maybe that was the last case.  Sorry.  Okay.  So

20 it's the El Paso County District Court.

21        MR. WEIN:  Yes, it is.

22        THE COURT:  But same difference, it doesn't matter

23 where it is, it's a non-bankruptcy court.  So my comments still

24 stand, that if it's criminal action that you're going after,

25 not stayed.  If it's he's a witness, he doesn't get out of

1   being a witness just because he's in bankruptcy.  But if you're

2   asserting claims against him, that at the end of the day you

3   want him to have personal liability for, then that's a problem.

4   You either had to have filed a proof of claim here or gotten

5   relief from stay to do that.  You just can't march ahead and

6   assume that you can march ahead.  So I want to make sure you

7   know that because at the end of the day, if you do, you could

8   end up getting sanctioned, and nobody wants to see that happen.

9   So, okay.

10          Let's get back to where we are.  So, Trustee's going

11   to look and investigate a little bit further.  I guess I heard

12   Mr. Usiak say that the Debtor co-signed mortgages, and that's

13   sort of hard for me to understand why that would happen if the

14   Debtor didn't have legal title interest in the properties.  How

15   does a Debtor give a mortgage on something that the Debtor

16   doesn't own?  Mr. Usiak.

17          MR. USIAK:  The Debtor was co-signing along with a

18   trust that owns the real estate, and following the 341 hearing

19   we have provided some documentation to the Chapter 13 Trustee.

20   If he needs any more we're more than happy to provide whatever

21   he needs.

22          THE COURT:  Yeah.  I'm going to need an explanation.

23   This -- what I see is very disconcerting to me.

24          MR. EVANS:  And I don't -- and, Your Honor, I

25   apologize, I don't have the documentation notes in front of me,

1    but I recall that we reviewed some extensive documents.  And I

2    think part of what maybe colored our objections was a lack of

3    claims and that the claims that were filed were secured by

4    property.  So he's either going to have to take care of those

5    secured debts or not, but he's got to get them all listed

6    properly.  And then there were no unsecured debts--

7            THE COURT:  Other than the priority claim of

8    Mrs. Schwab?

9            MR. EVANS:  Correct.  And then that's where we had to

10   get documentation on how much that DSO obligation was and get

11   the documents to review it to make sure it gets paid.

12           Beyond the DSO, though, we ran in -- I believe we ran

13   in to where there were no creditors, there were no claims filed

14   for unsecured debt, and everything's kind of locked up in the

15   security which -- and I believe we reviewed the documents, the

16   deeds and the mortgages, and I'll have to go back and take a

17   look and make sure that's the case, is to see how those were

18   signed.  We believe that he is the co-signer on the debts but

19   we believe he's not listed.

20           There may be an issue with -- there's a trust that

21   the other co-signer of the debts and I believe it's the trust

22   that owns the properties.  And listening here I can see that

23   there's potentially an issue with an individual and his trust

24   and/or LLC or Corporation acting individually.  I don't know.

25   But, again, there were no unsecured claims in the case in order

1    -- in a way to fight for.

2              THE COURT:  Were there -- oky.

3              MR. EVANS:  Beyond -- beyond the potential, what I

4    will look at is the bad faith filing or hiding of assets, that

5    type of thing, and what impact those would have.  That's what

6    I'll take -- I'll review that and make sure that's been

7    covered.

8              THE COURT:  Okay.

9              MR. EVANS:  Because I --

10             THE COURT:  I would appreciate --

11             MR. EVANS:  -- I understand what the Court's asking

12   and I'll go make sure that's done.

13             THE COURT:  Okay.  Thank you.  I appreciate that.

14   Okay.  All right.  So, shall we set a deadline for some status

15   report or something?  It doesn't have to be lengthy, but.

16             MR. EVANS:  That would be fine with the Trustee, Your

17   Honor.

18             THE COURT:  What works for your schedule?

19             MR. EVANS:  Well, there was -- and maybe Dan can

20   correct me.  But I think there's an Amended Plan that's been

21   filed on the 16th, which we've not reviewed.

22             THE COURT:  Okay.

23             MR. EVANS:  And I don't know if that went out on

24   notice with a deadline or not.

25             MR. USIAK:  That's correct.  And we need to have

1    instructions as far as noticing that corrected Amended Plan.

2            MS. SCHWAB:  I'd like -- but, Your Honor, excuse me,

3    I'm sorry.  But I have objected to that Plan.

4            THE COURT:  Okay.  And that's Mrs. Schwab who's

5    speaking?

6            MS. SCHWAB:  Yes, ma'am.

7            THE COURT:  Okay.  All right.  And so -- all right.

8    So, it does need to go out.

9            What's your question, Mr. Usiak, about notice?

10           MR. USIAK:  We filed a certificate and motion to

11   determine notice, and so we just need to get instructions on --

12   on mailing out and doing the notice on the Amended Plan.

13           THE COURT:  Okay.  So can you get that filed or

14   noticed out within a week's time?

15           MR. USIAK:  Oh, absolutely, yes.

16           THE COURT:  Okay.  So, by the 28th.  Send it to

17   everybody and let's do the full 28-day notice.

18           MR. USIAK:  Very good.  And that would be -- let's

19   see, we filed the Plan on the 16th, it's at Docket 76.

20           THE COURT:  Okay.  Okay, it's there.  But, right,

21   you've got to file your --

22           MR. USIAK:  Yes.

23           THE COURT:  -- notice, your certificate of service

24   and get your notice out, okay.

25           MR. USIAK:  That's correct.  That's correct.

1          THE COURT:  Okay.  And that will happen by next

2   Wednesday.  And then that should give the Trustee plenty of

3   time to file a status report, or you can do it in the form of

4   an objection.

5          MR. EVANS:  That's what I would ask, is that we be

6   able to do that in the form of an amended objection, if then

7   whatever's required before that deadline we'll file that.

8          THE COURT:  But if you don't object because you've

9   done your homework and you're satisfied, then file a status

10  report so I can understand.

11         MR. EVANS:  Got it.

12         THE COURT:  That will work.

13         MR. EVANS:  I'm going to file one or the other.

14         THE COURT:  Okay, excellent.  There's a plan.

15         Okay.  Ms. Schwab, let me hear from you generally.

16  Anything else you want the Court to know?

17         MS. SCHWAB:  Yeah.  I just have a question on, how

18  many times does Mr. Schwab get to file an objection -- I mean

19  Amended Plan when I will never agree to his payment plan?

20  Because I know he has money.  He hasn't paid me in over a year

21  and a half, and I will never agree to what he puts on his

22  Amended Plan.

23         THE COURT:  Okay.  Well, you can --

24         MS. SCHWAB:  I have a non-liable --

25         THE COURT:  Okay.  You can tee this up yourself by

1    filing a motion to dismiss and asking for the Court to kick

2    this out because he's had six times and it's futile at this

3    point, if that's your view, you can file that.  And that goes

4    out on notice and then we'll have a hearing on that.  So that

5    can be running at the same time that this latest version of the

6    Plan is running.

7              MS. SCHWAB:  I appreciate it.  Thank you so much.

8              THE COURT:  So I'm not requiring you to do that, but

9    you are certainly able to do that.

10             MS. SCHWAB:  I will.

11             THE COURT:  And that's how that tee's up that issue

12   best for the Court.

13             MS. SCHWAB:  Wonderful.  Thank you so very much.

14             THE COURT:  Okay.

15             MR. WEIN:  Your Honor, it's Mr. Wein, one more time.

16   Could I indulge you for just one more second?

17             THE COURT:  Absolutely.

18             MR. WEIN:  I just wanted to mention that having just

19   reviewed the quick notes from what you were telling me, and I

20   think I understand it a little better right now.

21             Mr. Usiak and Mr. Schwab had reduced the amount, the

22   original 30,000 they claimed, and they reduced that to zero, I

23   think the second or third amended claim.  And so my question

24   is, if they reduced it to zero I'm trying to figure out, except

25   for just kind of keeping me involved in this, why am I still

1   involved in this action then having been brought?  I guess if

2   the Court can answer that, or maybe I'm not understanding it.

3          THE COURT:  Mr. Usiak?

4          MR. USIAK:  I don't understand the question that

5   Mr. Wein is asking.

6          MR. WEIN:  I'll say it again.  The original documents

7   -- I think it was 33, and don't quote me on that -- that they

8   claim that I was a creditor for.  And then subsequent --

9   subsequent documents, I think it was the second Amended Plan

10  after I filed my first 28-pager to the Court, and they -- and

11  their documents reduced what I owed, their claim was a zero.

12  And so that's why my second amended -- basically my statement

13  here, Amended Plan was claiming that second zero.

14          Obviously the first claim was I owed E-4 money,

15  because that's what the claim starts, me owing E-4 money, not

16  Mr. Schwab money.  I clarified that.  I owe E-4 nothing.  E-4

17  owes me money.  And then they took it to zero, and then if it's

18  a zero then why am I even involved in this, is what I'm asking.

19          So, Mr. Usiak has that document.  I've had it.  It

20  shows a zero claim.  So why do you have a zero dollar claim

21  against someone?  Is it just statutory or can you please

22  explain that to me?

23          THE COURT:  It's a process where the Debtor may

24  dispute a claim and think they don't owe anything, but the

25  creditor might feel differently.  And so the way that they get

1    notice of what's happening in a case is that they are listed as

2    a creditor.  So, you know, the Debtor may say, I don't owe this

3    person any money, but I want to -- if I'm wrong they should

4    have a chance to object to the Plan and file a claim and

5    participate and I can object to their claim.  But they at least

6    get notice of what's happening in the case if they're listed as

7    a creditor.

8            If you don't want to receive any notice, because you

9    acknowledge you have no claims against Mr. Schwab personally,

10   then you could file a -- I don't know, a request for no further

11   notices and we'd take you off the matrix and they would take

12   you off their Schedules and that would accomplish that.  Is

13   that what you want?

14           MR. WEIN:  Well, that's -- that, I believe is, Your

15   Honor.  I want to preface it with my understand as I've

16   written, so I will say eloquently that I am not a creditor, I

17   don't want to be involved in the action, but I don't want to

18   biased or somehow in the future, you know, ways that I maybe --

19   might understand are not capable of saying -- taking a judgment

20   I get in the future against Mr. Schwab because he's done

21   something in your Court now to block my actions --

22           THE COURT:  But that is --

23           MR. WEIN:  -- and I thought that was -- his purpose.

24           THE COURT:  Mr. Wein, that is very very possible that

25   that will happen.  Because even though it may take you time to

1    pursue a legal action and get a judgment against him, he may

2    get it thrown out before you even get started because he's

3    gotten a discharge that wipes out any possible claim you might

4    have because you didn't file a proof of claim, and you need to

5    understand that.  It's not a question of when you get a Court

6    piece of paper, it's a question of when the acts occurred that

7    give rise to liability if there is liability.

8           So, for example, you think he embezzled money from

9    the company and that it hurt you personally, although that's

10   probably a derivative claim of the corporation.  But let's just

11   assume for the moment he did something to hurt you personally

12   six months before the bankruptcy was filed.  Even though you

13   may take two, three years to get a Court judgment if you were

14   allowed to pursue litigation, it would still be covered by this

15   bankruptcy.

16          So I just think there's a fundamental

17   misunderstanding of the world of bankruptcy, and it's

18   completely understandable if you're not a bankruptcy lawyer.

19   And I hear you that you say you can't afford one.  But you

20   really may be bound by what happens in this case, so you should

21   understand that going into this.  And that you aren't free to

22   just go after Mr. Schwab in a State Court proceeding.  You're

23   just not, unless it's a criminal proceeding.

24          MR. WEIN:  That does clarify it some, although, Your

25   Honor, I do have a proof of claim, it's just I use their zero

1  amount.  But I do understand now with your explanation.  I

2  thank you and the indulgence of the Court.  Because what you

3  just told me is what I thought he was doing, that's to

4  basically get in front of the actions before I could be

5  compensated for his evil doings, and in this case he's just

6  going to get in front of it and try not to have to pay, like

7  he's done with his wife and hurt so many other people.

8          But I do appreciate the long explanation.  I know you

9  don't normally have to educate people, and I won't ask any more

10  questions, and, thank you so much.

11          THE COURT:  Okay.  Certainly.  Thank you.  All right.

12  Anything further from anybody on this one?

13          MR. USIAK:  There is.

14          THE COURT:  Okay.

15          MR. USIAK:  Ms. Schwab filed a proof of claim and I

16  think a couple of amended proofs of claim and we have filed, on

17  behalf of Mr. Schwab, an objection to her proof of claim in the

18  dollar amount and how the dollar amount is calculated.  And so

19  I think that --

20          THE COURT:  Does this have to do with the valuation

21  of property that was given to her to offset the debt?

22          MR. USIAK:  Yes, Your Honor.

23          THE COURT:  Okay.  So --

24          MR. USIAK:  I think -- I suspect that we'll need an

25  evidentiary hearing to determine those values.

1          THE COURT:  Okay.  Have you filed a certificate of

2     contested matter on the claim objections?

3          MR. USIAK:  I have not.

4          THE COURT:  Okay.  Because that will have to happen

5     and then we'll get it set for hearing, so.

6          MR. USIAK:  Sure.

7          THE COURT:  Okay.

8          MS. SCHWAB:  And, Your Honor, can I ask one more

9     question, please?

10          THE COURT:  Yes.

11          MS. SCHWAB:  I have liens on all of Mr. Schwab's real

12     estate property.  So how does this effect the Chapter 13?

13          THE COURT:  Does Mr. Schwab own real estate

14     personally?

15          MS. SCHWAB:  He does.  He have them under Duke

16     Assets, which is a --

17          THE COURT:  Okay.  Well, then that's a different

18     entity, though, right?  It's not his name personally.

19          MS. SCHWAB:  No.  But it's his property.

20          THE COURT:  Well, Duke Assets, as far as I know,

21     isn't in bankruptcy.  But I don't know that you have a claim

22     against Duke Assets.  So you're going to have to sort that out

23     as well.

24          And, you know, I really -- if you can afford a lawyer

25     you really should, because you may be jeopardizing important

1    legal rights.  But I can't advise parties individually, so I'm

2    trying to do a little bit to educate generally about this

3    process, but that's about all I can do.

4              MS. SCHWAB:  Thank you.

5              THE COURT:  Okay.

6              THE CLERK:  He did file a certificate on contested

7    matter on April 2nd --

8              THE COURT:  Oh.

9              THE CLERK:  -- because these hearings are supposed to

10   include that matter.

11             THE COURT:  Okay.  All right.  I'm being informed,

12   Mr. Usiak, that you have filed your certificate of contested

13   matter on the claim objection to Ms. Schwab's claim.

14             MR. USIAK:  Okay.

15             THE COURT:  So we can go --

16             MR. USIAK:  And that's -- right, and that's why we

17   had the hearing scheduled for the 30th of April, I think.

18             THE COURT:  Okay.  So we can go ahead and set a trial

19   date on this.

20             MR. USIAK:  Okay.

21             THE COURT:  Do you need discovery?  Does anybody need

22   discovery before going to trial?

23             MR. WEIN:  Your Honor, this is Mr. Wein again.  Given

24   what I've heard today I may --

25             THE COURT:  Mr. Wein --

1           MR. WEIN:  -- may just --

2           THE COURT:  -- you're not a party to this.

3           MR. WEIN:  -- I may need this --

4           THE COURT:  Mr. Wein, let me just stop you.

5           MR. WEIN:  Yes.

6           THE COURT:  I'm talking about the objection between

7      the Debtor and Mrs. Schwab --

8           MR. WEIN:  I'm sorry.

9           THE COURT:  -- so it does not involve you.

10          MR. WEIN:  I'm sorry.

11          THE COURT:  It has to do with her claim.

12          Okay.  So as between Mr. Usiak and Ms. Schwab,

13     anybody need discovery?

14          MR. USIAK:  I'd like to reserve the right for some

15     very limited discovery.  I don't think it will be time

16     consuming.

17          THE COURT:  Okay.  What would you suggest for a time

18     frame that I look for a hearing date?

19          MR. USIAK:  Between 30 and 60 days.

20          THE COURT:  Okay.  All right.  And, Ms. Schwab, how

21     about you?

22          MS. SCHWAB:  No, I don't need it.  I know what it's

23     worth.  I looked it up on Blue Book value, so I don't know what

24     -- how far -- I mean I don't know why they want to carry this

25     on.  It's totally ridiculous.

1          THE COURT:  Well, in --

2          MS. SCHWAB:  He has all the information from Blue

3     Book value.  I don't know who's going to give better

4     information, but if that's what he needs I'm okay with that.

5          THE COURT:  Are we just talking about motor vehicles

6     here?

7          MS. SCHWAB:  Yes.

8          THE COURT:  Okay.

9          MR. USIAK:  Yes.

10         THE COURT:  And you all should think about whether or

11    not Blue Book values will be allowed as evidence in the

12    courtroom.  If you both stipulate to that then I'll accept it.

13    But somebody might object and then you might need an expert to

14    come in and -- okay, hold on, we're having an emergency.

15         Tornado sirens, and that we're supposed to go to the

16    basement?

17         THE CLERK:  Go to the hallways.

18         THE COURT:  Go to the hallways.  All right.  I am so

19    sorry, especially for those of you who have been holding a very

20    long time.  Tornado sirens are going off and we're all being

21    advised to evacuate to the hallways.

22         So, we will have to, what, kick you to next

23    Wednesday's hearing docket.  We'll come back on both finishing

24    Schwab and everybody after that, which is the Peniak

25    (phonetic), McDonald, Coyle (phonetic) and Domingus (phonetic)

1   cases.  I am very sorry, but we've got to evacuate.

2             MS. SCHWAB:  What time is that?

3             THE COURT:  1:30 next Wednesday.

4        (Time noted, 2:24 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    STATE OF COLORADO      )

2                          )  ss.        CERTIFICATE

3    COUNTY OF DENVER       )

4

5           I, Christopher Boone, Certified Electronic

6    Court Reporter and Notary Public within and for the

7    State of Colorado, certify that the foregoing is a

8    correct transcription from the digital recording of

9    the proceedings in the above-entitled matter.

10

11          I further certify that I am neither counsel

12   for, related to, nor employed by any of the parties

13   to the action in which this hearing was taken, and

14   further that I am not financially or otherwise

15   interested in the outcome of the action.

16

17          In witness whereof, I have affixed my

18   signature this 6th day of August, 2014.

19

20   My commission expires August 16, 2018.

21

22

23   _____

24   Christopher Boone,

25   AAERT Certified Electronic Court Reporter